# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **SHAYNA BOLGIANO** | **CIVIL ACTION NO. 6:17-1163** |
| **VERSUS** | **JUDGE UNASSIGNED** |
| **MARK GARBER, in his official capacity as the duty elected Sheriff of Lafayette Parish, et al.** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Pending before the undersigned on referral from the district judge is the "Rule 12(b)(1) Motion" filed by Mark Garber, in his official capacity as Sheriff of Lafayette Parish, and Freddie Laque (collectively, "the defendants"), who move this Court to stay or dismiss the plaintiff's complaint pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), on grounds a parallel lawsuit is pending in state court. The defendants argue the plaintiff's claims should either be dismissed or, alternatively, stayed pending resolution of the parallel state court proceeding. The motion is opposed by the plaintiff Shayna Bolgiano [Doc. 8], and the defendants have filed a Reply brief [Doc. 11]. For the following reasons, it is **RECOMMENDED** that the motion be **GRANTED**, and that the instant matter be **DISMISSED WITHOUT PREJUDICE**.

### *I. Background*

In the instant motion, the defendants argue the plaintiff has filed a parallel state court proceeding in which the allegations are virtually identical to the allegations in the instant lawsuit. In the state court proceedings, the plaintiff alleges she was hired by the Lafayette Parish Sheriff's Office on or about May 11, 2011. At the time,

Michael W. Neustrom was the duly-elected Sheriff of Lafayette Parish. The plaintiff alleges she was transferred to the position of Security Support Deputy within the Juvenile Assessment Center Unit of the Youth Services Section on or about April 7, 2014, and that on or about March 2, 2015, Lt. Freddie Laque was transferred to the position of Lieutenant over the Youth Services Section, thus making him her direct supervisor. The plaintiff alleges that soon after March 2, 2015, Laque "began targeting [her] with sexual and humiliating comments, pressuring text messages, as well as unwanted physical contact." The plaintiff alleges she ultimately reported the incidents through formal internal grievances but "faced deliberate hindrances and blatant attempts to disregard her allegations against Lt. Laque." The plaintiff further alleges she submitted a report to Risk Management on August 24, 2015 detailing the treatment she was experiencing, but that despite meeting with her, Sheriff's Officer personnel did not take any action to address her grievances. The plaintiff also alleges she was subjected to retaliation for filing the report, but that on January 14, 2016, Sheriff Neustrom found Laque had violated certain employment policies and suspended him for six days.

In her state court petition, the plaintiff alleges claims for battery and intentional infliction of emotional distress, and alleges the Lafayette Parish Sheriff's Office was vicariously liable for Laque's actions. As for Sheriff Neustrom, the plaintiff alleges he created a hostile work environment and ignored state law violations that occurred in the workplace. The plaintiff also argues Sheriff Neustrom allowed Mark Garber exclusive access to his office before and after the election, in violation of state law.

The plaintiff filed her state court lawsuit on November 17, 2015. The plaintiff

thereafter filed a charge of discrimination with the EEOC on April 26, 2016, and the defendants subsequently moved to stay the state court suit until the EEOC rendered a decision, a request that was denied by the state court. Discovery continued, and Sheriff Mark Garber was substituted as the proper party defendant after winning the sheriff's election.

The plaintiff filed the federal lawsuit on September 13, 2017, and the defendants subsequently filed the instant motion to dismiss, or alternatively, to stay, on November 14, 2017. In their motion, the defendants seek a dismissal, or stay, of the instant matter pending resolution of the state court lawsuit.

## *II. Legal Standard*

A motion to stay or dismiss based on abstention raises the question of whether a court should exercise subject matter jurisdiction and is properly considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. *Fed. R. Civ. P. 12(b)(1)*. The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to Plaintiff. *Truman v. United States,* 26 F.3d 592, 594 (5th Cir.1994). Moreover, the Court may consider affidavits and other evidence outside the pleadings in resolving a motion to dismiss under Rule 12(b)(1). *Williamson v. Tucker,* 645 F.2d 4047, 412–13 (5th Cir.1981). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001).

The issue of whether to abstain in this matter is governed by the United States

Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In *Colorado River*, the Supreme Court instructed that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given to them." 424 U.S. at 817. "In situations involving the contemporaneous exercise of concurrent jurisdictions," governing principles "rest on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id., quoting Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). The Fifth Circuit has interpreted *Colorado River* abstention to require a two-part analysis: First, courts must consider whether there are parallel proceedings pending in state and federal court. *RepublicBank Dallas, Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir.1987). If the proceedings are parallel, "exceptional circumstances" must exist to warrant abstention. *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir.2002). *See also Brown v. Pacific Life Insurance Co.,* 462 F.3d 384, 394 (5th Cir. 2002); *Kelly Ins., Inc. v. Cont'l Common Corp.,* 315 F.3d 494, 497 (5th Cir. 2002). Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two *fora*." *PPG Indus., Inc. v. Cont'l Oil Co.,* 478 F.2d 674, 682 (5th Cir. 1973); *AAR Int'l., Inc. v. Nimelias Enter. S.A.,* 250 F.3d 510, 518 (7th Cir. 2001).

There are six factors for determining whether "exceptional circumstances" exist: (1) the assumption by either state or federal court over a *res*; (2) relative inconvenience of the *fora*; (3) the avoidance of piecemeal litigation; (4) the order in

which jurisdiction was obtained by the concurrent *fora*; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Brown,* 462 F.3d at 395. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone, Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983).

### III. Analysis

**A.** **Step 1 – Parallel Actions**

The first step and a necessary prerequisite in applying the *Colorado River* doctrine is to determine if the federal and state court actions are parallel or concurrent proceedings. Both parties in the instant matter have largely skipped over this question, moving straight to a discussion of the "exceptional circumstances" factors. "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Bar Grp., LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 543 (S.D. Tex. 2017), *citing Mosley v. Baker*, No. 10 Civ. 165(NRB), 2011 WL 2693513, *2 (S.D.N.Y. June 30, 2011), *quoting Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. "[L]awsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums." *Id*. The Fifth Circuit has permitted some flexibility in the parallelism requirement, finding that "there need not

be applied in every instance a mincing insistence on precise identity of parties and issues." *See, e.g., Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006) ("Although it is well-established that the Colorado River abstention doctrine cannot be invoked to avoid federal jurisdiction where suits are not parallel, *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir.2002), we have recognized that "it may be that there need not be applied in every instance a mincing insistence on precise identity" of parties and issues), *citing RepublicBank Dallas, Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir.1987). "The critical determination is whether the non-federal litigation will dispose of all claims raised in the federal court action." *Mosley*, 2011 WL 2693513, *2. *See also Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) ("Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.").

Here, the state court lawsuit was filed by the plaintiff against Michael Neustrom and Freddie Laque for state law claims of battery, intentional infliction of emotional distress, hostile work environment, and retaliation. Sheriff Neustrom was replaced by Sheriff Garber as a party defendant when Sheriff Garber was elected. The same claims are pled against the same defendants in the federal litigation, with the addition of the plaintiff's Title VII claim. This Court notes that the plaintiff – tellingly – argues that if the federal court litigation is sustained, she intends to seek a stay of the first-filed state court litigation, without citing the undersigned to any statutory or jurisprudential authority for such a course of action. The foregoing militates in favor of a finding that even the plaintiff believes the two actions are

parallel, as she is willing to stay one of the lawsuits, but simply prefers to stay the first-filed case.

With the foregoing in mind, the undersigned concludes the state and federal court proceedings are parallel.

**B.  Step 2: "Exceptional Circumstances" Factors**

Having determined that the state court and federal court proceedings are parallel, this Court now considers the "exceptional circumstances" factors for abstention. Defendants concede the first two factors weigh against abstention as there is no property, or *res*, in either the state court or federal suit and both courts are located in Lafayette, Louisiana, and that the fifth factor is neutral as this federal complaint states both federal and state causes of action. The undersigned agrees and will now address the remaining factors.

**1.  Factor 3 – The avoidance of piecemeal litigation**

The record shows that the third factor – the avoidance of piecemeal litigation – weighs in favor of abstention. Here, the state court has already stricken certain allegations and dismissed certain causes of action,[1] which have been reasserted in the federal complaint. For example, the state court judge ruled the plaintiff has no cause

---

[1] The defendants filed three exceptions of no cause of action in the state court suit: (1) one regarding the liability of Lafayette Parish Sheriff's Office through Mark Garber; (2) one regarding the liability of Michael Neustrom; and (3) one regarding the allegations of political campaigning and falsification of records. The defendants also filed a motion to strike allegations in the petition and a dilatory exception of noncomformity of the petition. After a hearing, the court granted the exception of noncomformity of the petition and exception of no cause of action regarding Neustrom's liability dismissing him as a party leaving only Lafayette Parish Sheriff's Office (through Garber) and Laque as Defendants. The court granted the motion to strike in part. The exception of no cause of action regarding Lafayette Parish Sheriff's Office liability through Garber was granted in part and dismissed in part. The exception of no cause of action regarding political campaigning and falsification of records was denied as the parties agreed the Plaintiff has no cause of action for the alleged violations of LA R.S. 42:1116, LA R.S. 134, LA R.S. 134.3. See Exhibit I, Transcript of Hearing, attached to defendants' motion to dismiss. The plaintiff filed a Third Supplemental and Amending Petition for Damages to comply with the court's order.

of action for negligence claims, however the plaintiff asserts claims for negligence in her federal lawsuit. [Doc. 1, ¶ 67]. The state court judge also partially granted the defendants' Motion to Strike, striking certain irrelevant allegations from the plaintiff's state court complaint; these allegations, which a court has already found irrelevant, are included in the plaintiff's federal complaint. [Doc. 1, ¶¶72-74]. The state court also ordered the plaintiff to amend her Second Supplemental and Amending Petition for Damages to clarify that she was not asserting causes of action for negligence but instead was alleging negligence as a factual basis to support her other claims. The plaintiff amended her claim to comply with this ruling, but then, in her federal complaint, includes these same allegations that the state court judge determined were not appropriate.

The plaintiff argues the defendants exaggerate the progression of the state court lawsuit, noting the defendants have not answered the plaintiff's second and third supplemental and amending petitions. As the defendants point out, however, the petitions were not answered because the defendants filed three exceptions of no cause of action, a dilatory exception, and a motion to strike in response to the Second Amending and Supplemental Petition. The plaintiff was then ordered by the state court to amend her petition due to these motions, which necessarily delayed the filing of answers.

After review of the proceedings in state court and consideration of the record there, the undersigned concludes that allowing this suit to proceed in federal court could result in piecemeal litigation as the courts decide discrete discovery issues at different times leaving the parties to wonder what *res judicata* effect one decision has

on another, especially in light of the decisions already rendered by the state court. Thus, this factor weighs in favor of abstention.

### 2. Factor 4 – The order in which jurisdiction was obtained by the concurrent *fora*

The fourth factor also favors abstention as not only was the state suit filed first, but it was filed almost two years ago. Moreover, not only has discovery begun, but litigation regarding the limits and extent of discovery has begun. The only activity that has occurred in the instant case is the filing of the instant motion to dismiss. After consideration of this factor, the undersigned concludes it favors abstention.

### 3. Factor 6 – The adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction

As for the sixth factor, the undersigned concludes the state proceedings can adequately protect the plaintiff's rights. The only claim not asserted in the state court petition is the plaintiff's Title VII claim. However the law is well-settled that state and federal courts have concurrent jurisdiction over Title VII cases. *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820 (1990); *Shields v. City of Shreveport,* 579 So.2d 961, 966 (La. 1991). Thus, the plaintiff can simply add her Title VII claim to the state court litigation. The majority of the plaintiff's claims are comprised of her state tort law claims, which are more fitting for resolution by the state court. Thus, this factor favors abstention.

The plaintiff relies heavily on the decision in *Byrd v. Board of Supervisors for the University of Louisiana System,* 2015 WL 4253967 (W.D. La. 2015), wherein the district court denied defendant's motion to abstain in a Title VII suit. In *Byrd,* the

plaintiff filed a state law claim for damages against her employer and supervisor on February 4, 2013 for damages arising out of alleged sexual harassment. Upon receiving a right to sue letter from the E.E.O.C., she then filed a federal suit under Title VII on June 30, 2014 based on the same factual allegations set forth in the state lawsuit. The employer was the only defendant in the federal lawsuit; the supervisor was not sued. Even though the parties in the lawsuits were not identical, the court determined the suits were parallel. It then decided not to abstain as discovery had not yet commenced in the state court suit, and the plaintiff asserted only federal claims in her federal suit. Therefore, only state causes of action were asserted in the state court lawsuit and only federal causes of action were asserted in the federal court lawsuit.

The undersigned agrees with the defendants that *Byrd* is distinguishable. While discovery had not commenced in *Byrd*, in the instant case, discovery has not only started, it has progressed significantly. By the plaintiff's own recitation of the procedural history of the case, discovery requests and requests for deposition were propounded in this matter, and a hearing was heard on a motion to compel. Additionally, the plaintiff asserts the same state law actions in her federal suit as are already pending in her state court lawsuit. Thus, in the instant matter, the state court and federal court would not simply be deciding different causes of action based on the same facts but will be deciding the <u>same</u> state causes of action based on the same facts.

The undersigned concludes the instant matter more closely resembles the

factual scenario in *Abe v. New York University,* 2016 WL 1275661 (S.D. N.Y. 2016). In *Abe,* the plaintiff filed suit in state court under state law for discrimination and retaliation in the workplace. The plaintiff then filed a federal court suit alleging claims under federal law, including Title VII, in addition to state law claims. Addressing the fact that the federal court lawsuit included Title VII and ADEA claims, the court stated:

> Specifically, the federal Title VII and ADEA claims, like those claims brought in the State Action under NYCHRL, are all premised on an alleged hostile work environment and discriminatory employment practices based on Plaintiff's age, race, national origin, and retaliation.

Abe, 2016 WL 1275661, at *6. Thus, the court concluded both complaints were "largely based on the same facts and circumstances." *Id.* at *1. After finding the suits were parallel and considering the six factors, the court abstained and dismissed the federal suit, stating:

> To recap, the Court concludes that two of the Colorado River factors are neutral, and so favor retention of jurisdiction, one factor weighs against abstention, and three factors strongly weigh in favor of abstention. Mindful of its "virtually unflagging obligation" to exercise its jurisdiction, the Court nonetheless finds abstention warranted under the "exceptional circumstances" that are present here. In particular, the Court finds the fourth factor – the amount of progress in the State Action – to practically compel this result. As stated earlier, nearly twenty motions have been litigated in the State Action; thousands of pages of documents have been produced; and hundreds of interrogatories have been answered. By contrast, the Federal Action, filed nearly five years later, has not progressed beyond this motion. Much of the abstention case law involves federal suits that were brought months or even days after the state suit was initiated. Thus, a situation in which a federal action is brought four-and-a-half years after a state action, which involves nearly identical issues and facts and has significantly progressed into discovery, is truly exceptional, and courts have not hesitated to abstain under similar circumstances.

11

*Id.* at *9 (internal citations omitted).

Here, the undersigned concludes that significant progress has been made in the state court litigation. Claims have been dismissed, amended, and/or clarified, discovery has been propounded, and the matter has been pending for more than two years. In contrast, the only activity that has taken place in the federal court litigation is the consideration of this motion.

Thus, while mindful of its "virtually unflagging obligation" to exercise jurisdiction, *Colorado River*, 424 U.S. at 817, the Court finds that, "after careful balancing of the important factors as they apply," that abstention is warranted under the truly exceptional circumstances present here. Where "the movant has met its burden" of showing that abstention is warranted, "the Colorado River exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate." After consideration of the facts and circumstances of this case, the undersigned recommends that the instant federal lawsuit be dismissed without prejudice.

### *IV. Conclusion*

Based on the foregoing analysis, the under signed recommends that the Court **GRANT** the "Rule 12(b)(1) Motion" filed by Mark Garber, in his official capacity as Sheriff of Lafayette Parish, and Freddie Laque (collectively, "the defendants"), and that the claims alleged by the plaintiff in the instant federal court lawsuit be **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b),

parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed at Lafayette, Louisiana, this 26th day of February, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE